IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GABRIEL SHION FULLERTON                                                                  PLAINTIFF

vs.                                                                       CIVIL ACTION NO. 3:14CV67-SAA

COMMISSIONER OF SOCIAL SECURITY                                                          DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Gabriel Shion Fullerton for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed an application for benefits on June 24, 2010 alleging disability beginning on June 1, 2010. Docket 11, p. 139-49, 173. Plaintiff's claim was denied initially on February 2, 2011, and upon reconsideration on March 15, 2011. *Id.* at 73-76, 80-93. He filed a request for hearing and was represented by counsel at the hearing held on January 11, 2013. *Id.* at 33-71. The Administrative Law Judge (ALJ) issued an unfavorable decision on February 14, 2013, and on March 5, 2014, the Appeals Council denied plaintiff's request for a review. *Id.* at 13-27, 6-8. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on July 14, 1980 and has a high school education and some college course work. Docket # 11, p. 38. He spent four years in the Marine Corps and was 32 years old at the time of the ALJ's decision. *Id.* Plaintiff's past relevant work was as a truck driver, material handler, garment folder and substitute teacher. *Id.* at 65. He contends that he became disabled before his application for benefits as a result of depression, sleep apnea, suicidal dreams, nightmares, headaches, numbness on right side, dizziness and chiari malformation. *Id.* at 139-49.

The ALJ determined that plaintiff suffered from "severe" impairments including "Chiari malformation status post decompression, depression and generalized anxiety," (Docket 11, p. 18), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926 ). *Id.* at 19-20. Based upon testimony by the vocational expert [VE] at the hearing and upon consideration of the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform combination of light and sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 4 hours total in an 8-hour workday; and sit 6 hour total in an 8-hour workday. . . . The claimant can understand, remember and carry out simple job instructions. He can sustain concentration and persistence for two-hour periods in an eight-hour workday. He can frequently interact with supervisors and co-workers and frequently respond appropriate to changes in workplace. The claimant requires use of a cane any time he is up and moving about.

Docket 13, p. 21. Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in that his claimed symptoms, stated

limitations and subjective complaints – particularly concerning the intensity, persistence and limiting effects of these symptoms – are not credible. *Id.* at 24. After evaluating all of the evidence in the record, including testimony of a VE at the hearing, the ALJ held that plaintiff could perform the job of a telephone quotation clerk, surveillance system monitor and laminator I. *Id.* at 26. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

Plaintiff claims that the ALJ erred because he did not properly evaluate his credibility, the seriousness of his impairments, the pain from his impairments or the need for a cane, and because the ALJ failed to determine whether plaintiff could perform work on a "regular and ongoing basis."

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even

---

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

if it finds that the evidence leans against the Commissioner's decision.[10]  The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).  Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."  *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III.  DISCUSSION

**A.  Whether the ALJ properly considered the severity of plaintiff's impairments.**

Plaintiff contends that the ALJ did not properly evaluate the severity of his Chiari malformation and his obstructive sleep apnea.  Docket 15, p. 6-14.  To support his assertion, plaintiff cites multiple websites that discuss possible symptoms of Chiari malformation, but does not provide any opinion from a physician indicating that he suffers from impairments greater than those provided for in the RFC.  For instance, plaintiff notes problems with balance, but the RFC specifies that "claimant requires use of cane any time he is up and moving about."  Docket 11, p. 21.

---

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

A diagnosis of Chiari malformation does not automatically make one disabled.  Plaintiffs in other cases have been deemed not disabled despite a Chiari malformation diagnosis.  *See, e.g., Ahmad v. Comm. of Soc. Sec.*, 531 Fed. Appx. 275, 277 (3rd Cir. 2013) (finding plaintiff had RFC to perform sedentary work despite diagnosis of Chiari malformation).  The ALJ accounted for plaintiff's subjective complaints and limited him to less than a full range of light work or sedentary work despite the Medical Source Statement from consultative physician Dr. Brent, who concluded that plaintiff could perform a full range of light work.  Docket 11, p. 21-25, 307-314.

Similarly, plaintiff asserts that the ALJ should have found his obstructive sleep apnea to be a severe impairment, because he testified to ongoing problems caused by his sleep apnea.  Docket 15, p. 10.  However, plaintiff had offered no objective medical evidence that his sleep apnea imposed more than a minimal impact on his ability to perform work related activities.  According to Dr. Mariencheck, plaintiff's physician who interpreted his sleep study, the CPAP titration study showed that "[n]asal CPAP was quite effective in controlling [plaintiff's] sleep apnea and snoring . . ."  Docket 11, p. 293.  Dr. Mariencheck further noted that he expected the CPAP usage to "result in more refreshing sleep with improvement in daytime awakeness . . ."  *Id.*     The ALJ not only considered the severity of plaintiff's sleep apnea, but he also considered it in combination with plaintiff's other impairments in assessing plaintiff's RFC.  He made concessions for plaintiff's alleged fatigue when he limited plaintiff to simple job instructions and concentration and persistence for only two-hour periods in an eight-hour workday.  *Id.* at 21.  Plaintiff simply has not provided evidence to support his assertion that his Chiari malformation causes greater limitations than those provided by the RFC or that his sleep

6

apnea is more severe than the ALJ found. Therefore, these assertions to the contrary are without merit.

### B. Whether the ALJ erred in his evaluation of plaintiff's use of a cane.

Plaintiff argues that the ALJ contradicted himself by including in plaintiff's RFC that he needed a cane, but then found that plaintiff's testimony that he needed a cane was not credible; this contradiction, says plaintiff, required that ALJ have given plaintiff an opportunity to explain the discrepancy during the hearing. Docket 15, p. 15. As the Commissioner acknowledges, however, "[w]hile the ALJ discussed inconsistencies in the record regarding Plaintiff's alleged 'need for a cane' during his analysis of Plaintiff's credibility, the ALJ ultimately resolved the conflicts in the evidence in Plaintiff's favor, and, as Plaintiff admits, included a cane requirement in Plaintiff's" RFC. Docket 17, p. 12.

The Fifth Circuit Court of Appeals has routinely held that the ALJ has the primary responsibility for resolving conflicts in the evidence. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ thoroughly analyzed plaintiff's credibility and his statements concerning his inability to balance and need for a cane to prevent falls. He noted that despite testifying to his need for a cane, plaintiff told his VA physician that he had fallen twice while ice skating with his daughter, reported being able to walk in his yard and appeared at his physician's office without a cane. Docket 11, p. 13. Despite the clear inconsistencies between plaintiff's testimony and his reports to his physician which indicated that he didn't have a need for a cane every day, the ALJ included the need for a cane in the RFC. Because the ALJ was primarily responsible for resolving the conflict in the testimony and the medical evidence and because he resolved it in plaintiff's favor, plaintiff's assignment of error is without merit.

**C. Whether the ALJ failed to properly determine the plaintiff's credibility as to pain.**

Plaintiff alleges that the ALJ erred by not properly considering the pain associated with his Chiari malformation. Docket 15, p. 18-19. This appears to be a continuation of plaintiff's argument that the ALJ failed to properly consider the severity of the Chiari malformation. He argues that the ALJ failed to consider the factors articulated by Soc. Sec. Rule 96-7p which require an evaluation of a variety of factors including plaintiff's daily activities, location, frequency and intensity of the pain or other symptoms, factors that precipitate and aggravate symptoms, the type, dosage, effectiveness and side effects or any medication taken to alleviate the pain, treatment received to relieve the pain, other measures taken to relieve the pain, and any other factors concerning the plaintiff's functional limitations and restrictions due to pain. Docket 15, p. 19.

However, the ALJ clearly articulated many of these factors when evaluating the credibility of plaintiff's statements concerning his limitations. He noted that plaintiff is able to conduct some daily activities as he is able to provide childcare for his infant daughter. Docket 11, p. 20. He further noted that plaintiff watches television, reads, visits with his friends regularly, has a girlfriend, goes to the grocery store, and attends church occasionally. *Id.* The ALJ noted that plaintiff takes prescription pain medication, but that an April 7, 2011 VA examination found that plaintiff was in "no acute distress," and a note from March 7, 2012 indicated he fell while ice skating with his daughter. The ALJ referred to the September 17, 2012 office visit, which found "claimant admitted doing well for last six months, no new symptoms, and walking fine, but cannot walk long distance. Gait was with a limp and no cane. . . . . Despite pain, he was alert and oriented. . . . [T]reatment notes revealed no persistent

medication side effects." Docket 11, p. 23. It is clear that the ALJ considered a variety of factors, including but not limited to those set forth in Soc. Sec. Rule 96-7p, when weighing plaintiff's credibility as to his statements concerning pain. Therefore, this assignment of error is without merit.

**D. Whether the ALJ properly considered the plaintiff's ability to perform work on a regular and ongoing basis.**

Plaintiff claims the ALJ's failure to expressly articulate that plaintiff could perform work "on a regular and ongoing basis" is reversible error. Docket 15, p. 20-23. Plaintiff relies upon a Fifth Circuit Court of Appeals case from 1990 holding that in addition to finding that plaintiff may be able to perform certain jobs, an ALJ must make "a determination that the claimant can hold whatever job he finds for a significant period of time." *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990). However, the Fifth Circuit has since held that "an ability to perform work on a regular and continuing basis is inherent in the definition of RFC (residual functional capacity)." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). The court specifically found in *Dunbar* that it is not necessary for an ALJ to make "an explicit finding in every case that the claimant can not only engage in substantial gainful activity but maintain that employment as well." *Id.* There is nothing about the instant case to suggest that plaintiff's ability to maintain employment is compromised such that a specific finding as to plaintiff's ability to perform the work on a regular and continuing basis is necessary. Plaintiff's reliance on *Moore* for any assertion to the contrary is misplaced.

The court concludes that in light of the objective evidence, the opinions from consultative and the treating physicians and the testimony of plaintiff, the ALJ had sufficient evidence to

determine plaintiff's impairments and to make the ultimate decision regarding disability. Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairments met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the treatment records of the plaintiff's treating physicians, as well as the consultative exams performed at the ALJ's request. The plaintiff did not provide credible evidence that his alleged impairments affect his ability to work, and the ALJ adequately explained his reasons for questioning the plaintiff's credibility. The court holds that the decision of the Commissioner should be affirmed.

## IV. CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 7th day of November, 2014.

    /s/ S. Allan Alexander  
UNITED STATES MAGISTRATE JUDGE